IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NICKOLE BYBEE, | CV. 06-850-AS |
| Plaintiff, | FINDINGS AND |
| v. | RECOMMENDATION |
| MARSHALLS OF MA, INC., a foreign corporation, | |
| Defendant. | |

ASHMANSKAS, Magistrate Judge:

Plaintiff, Nickole Bybee ("Plaintiff"), was terminated from her employment with Marshalls of MA, Inc. ("Defendants"), shortly after she gave birth to her third child. In this lawsuit, Plaintiff alleges that her treatment while she was pregnant and her termination violated Title VII and the Americans with Disabilities Act ("ADA"), as well as Oregon's sex and disability discrimination statutes.[1] Defendant moves for summary judgment on all claims.

---

[1] Plaintiff also alleged a claim under Oregon's Family Medical Leave Act and a claim for wrongful discharge but conceded these claims in her memorandum in opposition to Defendant's motion for summary judgment.

Background

In late July 2004, Defendant hired Plaintiff as a Service Desk Associate in its Hillsboro, Oregon, store. Shortly thereafter, Plaintiff learned that she was pregnant with her third child, which was due to be delivered in May 2005.

Plaintiff had a history of migraine headaches accompanied by sensitivity to light and sound, short periods of blurred vision, crying, and occasional vomiting. Plaintiff treated the headaches with ibuprofen, tylenol or vicodin and laid down in a quiet place until the headache passed, which usually occurred within 45 minutes to an hour. After the headache passed, Plaintiff was able to resume her regular activities.

Prior to becoming pregnant, Plaintiff never experienced a migraine headache while at work. However, her pregnancy seemed to increase the number of headaches to two per month. As a result, Plaintiff provided assistant manager, Sharon Miller, with a note from her doctor requesting that she be allowed to take breaks and to rest in a dark room when she felt a headache coming on. Defendant complied with this request by allowing Plaintiff to take a break and relax in the back room during the three to four headaches she suffered at work during the term of her pregnancy. Plaintiff never missed work because of a pregnancy.

As her due date neared, Plaintiff advised manager, Diantha Broomas, and assistant manager, Marquita Lockett, that she needed three months off to have her baby and recover from the planned Caesarian. Defendant's leave policy requires that an employee first notify their manager of their desire to take a medical leave of absence. Then, the employee must submit a completed medical disability claim form to the human resources department ("HR"). A request for medical leave that is not accompanied by a completed claim form will be denied. If an employee who has requested

medical leave stops working but does not provide HR with a completed claim form, Defendant's policy is to send the employee a letter advising them that HR has not received the form and that failure to provide HR with the form within the next two weeks will result in the employee being deemed to have voluntarily resigned. In accordance with this policy, Broomas informed Plaintiff that she would need to provide HR with a doctor's note and a completed medical disability claim form. Plaintiff's last day with Defendant was April 30, 2005.

Plaintiff claims that on May 2, 2005, her doctor faxed the completed leave of absence form to HR and that she mailed a copy to HR on that day as well. HR represents that it never received the form. HR claims that on May 17, 2005, in accordance with Defendant's policy, it mailed Plaintiff a letter indicating that if she did not submit the completed claim form by May 31, 2005, she would considered to have voluntarily resigned her employment. Plaintiff denies ever receiving the letter. She represents that the letter was sent to her old address and that she had provided Defendant with her change of address information in early April 2005. On June 14, 2005, in the absence of a completed leave request, HR instructed Miller to enter the termination of Plaintiff's employment.

On July 17, 2005, Plaintiff brought her baby to the store to visit Lockett. When Plaintiff indicated that she planned to return to work soon, Lockett informed her that she had been terminated because she never submitted her completed claim form. Lockett told Plaintiff that they would love to have her back at work and that she just needed to fill out another job application. Shortly thereafter, Broomas called Plaintiff at the number Plaintiff had provided the day before. When Plaintiff did not answer, Broomas left a voice mail explaining that Plaintiff could be reinstated to

/ / / / /

/ / / / /

her former position and pay if she provided the leave of absence form completed by her doctor.[2]

Plaintiff decided not to return to work because she felt it was unfair that she had been terminated after doing everything that she had been asked to do, and that she had to submit another application to return to work. She was also concerned that she would not be allowed to return to the same position at the same pay although she did not discuss this with anyone at the store. Instead, Plaintiff applied for unemployment compensation and filed this action.

## Legal Standard

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). "[T]he requirement is that there be no _genuine_ issue of _material_ fact." Anthes v. Transworld Systems, Inc., 765 F. Supp. 162, 165 (Del. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986))(emphasis in original).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is absent. Celotex v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the onus is on the nonmovant to establish that there is a genuine issue of material fact. Id. at 324. In order to meet this burden, the nonmovant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Celotex, 477 U.S. at 324.

---

[2]Plaintiff disputes this fact in her response to Defendant's concise statement of material facts but does not provide any evidence that Plaintiff did not receive the message or that the call was never made.

An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

## Discussion

**Federal and State Sex/Pregnancy Discrimination**

Plaintiff has alleged discrimination claims under both Title VII and O.R.S. Chapter 659 arising from the termination of her employment. Because O.R.S. Chapter 659 was, to some degree, patterned after Title VII, O.R.S. Chapter 659 is generally interpreted consistently with Title VII. Under both statutes, a plaintiff may prove unlawful discrimination by showing either "*quid pro quo*" harassment or "hostile environment" harassment. Meritor Sav. Bank v. Vinson, 477 U.S. 57 (1986); Ellison v. Brady, 924 F.2d 872, 875 (9th Cir. 1991); Mains v. II Morrow, Inc., 128 Or. App. 625, 633-36 (1994).

In 1978, Congress amended Title VII by enacting the Pregnancy Discrimination Act which provides in relevant part:

> The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. § 2000e(k).[3] The Pregnancy Discrimination Act clarified that "for all Title VII purposes,

---

[3] O.R.S. Chapter 659 contains a substantially similar provision. O.R.S. 659.029.

Page -5- FINDINGS AND RECOMMENDATION                                      {SIB}

discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." Newport News Shipbuilding and Dry Dock Co. v. EEOC, 462 U.S. 669, 684 (1983).

A plaintiff can prove an employer's unlawful Title VII discrimination under either of two theories. A disparate impact theory involves a "facially neutral employment criterion that has an unequal effect on members of a protected class." Sischo-Nownejad, 934 F.2d 1104, 1109 (9th Cir. 1991). A disparate treatment theory, on the other hand, involves intentional discrimination on the basis of race, color, religion, sex, or national origin. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335, fn. 15 (1977); Sischo-Nownejad, 934 F.2d at 1109. "Proof of discriminatory motive is critical" to a claim of disparate treatment. Teamsters, 341 U.S. at 335, fn. 15.

Plaintiff's termination claims in this case are based on a theory of disparate treatment. In order to prove disparate treatment, Plaintiff "may establish a *prima facie* case by introducing evidence that 'give[s] rise to an inference of unlawful discrimination.'" Sischo-Nownejad, 934 F.2d at 1109, quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). She may meet this burden by demonstrating that: 1) she is a member of a protected class;  2) she was performing her job in a satisfactory manner;  3) she suffered an adverse employment decision; and 4) she was treated differently than other persons outside her protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Sischo-Nownejad, 934 F.2d at 1109; Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 672 (9th Cir. 1988). In a summary judgment motion, the court must view the facts in the light most favorable to the nonmovant, and the amount of evidence which she is required to produce to create her *prima facie* case is "very little." Sischo-Nownejad, 934 F.2d at 1111. Once Plaintiff has established her *prima facie* case, the burden then shifts to Defendant "to

articulate a legitimate, nondiscriminatory reason for the challenged action. If [it] does so, then the burden returns to plaintiff to prove that the articulated reason is pretextual." Id. at 1109.

There is no dispute that Plaintiff was a member of a protected class and was performing her job in a satisfactory manner. While being terminated is clearly an adverse employment action, Defendant offered to reinstate Plaintiff to her previous position and wage rate if she complied with Defendant's medical leave policy and provided HR with her completed medical disability claim form. Plaintiff was also offered the option of completing another application and being rehired by Defendant in the same capacity. This "termination" does not really qualify as an adverse employment action because Defendant virtually offered to set the termination aside if Plaintiff wanted to return to work. Additionally, Plaintiff has failed to present any evidence that she was treated differently than other persons outside her protected class. There is no evidence that nonpregnant employees who failed to provide HR with a completed medical claim form were allowed to return to their jobs when their medical condition ceased to exist.

Plaintiff argues that Defendant failed to follow it's own disciplinary procedures by not providing Plaintiff with a verbal and two written warnings before disciplining her. The disciplinary procedures do not apply and are not realistic in this situation. Defendant did not have the opportunity to "talk" with Plaintiff about her failure to show up for work because Plaintiff was not at the store. Defendant's medical leave policy, which requires an employee to provide HR with a completed medical leave form or be viewed as voluntarily resigning from employment, clearly covers maternity leave. Plaintiff was advised of the policy and failed to comply with it. When she was given the opportunity to be reinstated if she did comply with the policy, she opted to apply for unemployment benefits and stay home to take care of her children.

Plaintiff has failed to meet her burden of proof with regard to a *prima facie* claim for sex discrimination. Defendant is entitled to summary judgment on Plaintiff's sex/pregnancy discrimination claims.

**Federal and State Disability Discrimination**

Plaintiff alleges that Defendants violated the ADA and its state counterpart by refusing to accommodate her pregnancy and migraine headaches and terminating her.[4] The ADA prohibits covered employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). In order to prevail on an employment termination claim under the ADA, a plaintiff must establish that: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified, that is, with or without reasonable accommodation (which she must describe), she is able to perform the essential functions of the job; and (3) the employer terminated her because of her disability. Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999).

---

[4] The standards for an ADA claim are also the standards for a similar claim under the applicable Oregon statute. Accordingly, unless otherwise noted, this court will interpret ORS 659.436 through 659.449 consistently with the ADA. See Wheeler v. Marathon Printing, Inc., 157 Or.App. 290 (1998) (in 1997 the legislature enacted ORS 659.436 through ORS 659.449, Oregon's new Discrimination Against Disabled Persons in Employment Act, which are modeled after the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and contain language significantly similar to the ADA).

The ADA defines "disability" as including (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual, (2) having a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff asserts that she was disabled by her pregnancy and migraine headaches or that Defendant considered her to be disabled because of these conditions.

With respect to the first category - an impairment that substantially limits one or major live activities - "major life activities" include self care, ambulation, communication, transportation, education, socializing and employment. See 29 C.F.R. § 1630.2(I); Or. Rev. Stat. § 659A.100(2). "Substantially limits" is defined by the regulations to include someone who is "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). The evidence shows that Plaintiff's condition required her to take a 45-minute break to take her medication, eat something and lie down in a quiet room. After that, she could return to normal activities. The headaches occurred at work less than once a month during Plaintiff's pregnancy and she never missed work during her pregnancy. Plaintiff was not "substantially limited" by her pregnancy or her migraine headaches and is, therefore, not disabled under the act.

With respect to the third category - regarded as having such an impairment - "[t]here are two apparent ways in which individuals may fall within [the "regarded as" disabled provision of the ADA]: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton V.

United Airlines, 527 U.S. 471, 489 (1999). There is no evidence that anyone at the store regarded Plaintiff as having any substantial impairments or limitations as a result of her pregnancy or migraine headaches.

Even assuming Plaintiff can show that she is disabled and entitled to the protections of the ADA, she is unable to state a prima facie claim under the ADA because she has failed to present evidence that she was discriminated against because of her disability. As discussed above, Plaintiff was terminated because she failed to follow the proper procedures to obtain medical leave, not because she was pregnant or suffered from migraine headaches. Additionally, Plaintiff was offered reinstatement if she complied with Defendant's leave policy by providing a completed medical leave form or completing a new application.

Plaintiff's allegations that Defendant failed to reasonably accommodate her disability are also not supported by the evidence. Under the ADA, an employer must accommodate a qualified individual with a disability, 29 C.F.R. § 1613.704(a), where such accommodation is reasonably possible and does not impose undue hardship. 29 C.F.R. § 1613.704(a); Buckingham v. United States, 998 F.2d 735, 739-40 (9th Cir. 1993). To prevail on a reasonable accommodation claim, plaintiff must show that (1) the employer is subject to the ADA; (2) that she is an otherwise qualified handicapped individual; (2) that she is capable of performing the essential functions of her job; and (4) that the employer had notice of the disability and failed to provide accommodation. Lyons. v. Legal Aid Soc., 68 F.3d 1512, 1515 (2nd Cir. 1995); Buckingham, 998 F.2d at 739-40.

Plaintiff provided Defendant with a letter from her doctor asking that she be allowed to take a break when she felt a headache coming. Plaintiff admits that Defendant complied with this request and stated at her deposition that Defendant did not take any adverse action against her because of

her migraine condition. Bybee Depo. at 177.  She also indicated that, before her termination on July 17, 2005, she did not believe that Defendant discriminated against her because of her pregnancy. Bybee Depo. at 179.  Plaintiff has failed to adequately support her disability discrimination claims. Defendant is entitled to summary judgment on these claims as well.

## Conclusion

Defendant's motion for summary judgment should be GRANTED.

## Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due no later than **March 28, 2007**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed.  Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 13th day of March, 2007.

        /s/ Donald C. Ashmanskas
        DONALD C. ASHMANSKAS
        United States Magistrate Judge